UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARLENE BENSON AND ROBERT BENSON | CIVIL ACTION |
| VERSUS | No. 05-2777 |
| REGIONAL TRANSIT AUTHORITY ET AL. | SECTION I |

## ORDER AND REASONS

Before the Court is a motion[1] filed by plaintiffs, Darlene and Robert Benson, to enforce judgment and to issue writs of execution and mandamus directing the defendant, City of New Orleans (hereinafter "City"), to pay plaintiffs the amount awarded in the Consent Judgment.[2] Plaintiffs ask that the City be forced to pay them from the settlement the City received as a result of the multi-district litigation entitled *In Re: Oil Spill by the Oil Rig Deepwater Horizon*, 10-MD-2179, otherwise known as the "BP Settlement." The City opposed the motion.[3] For the following reasons, plaintiffs' motion is **DENIED**.

## BACKGROUND

Plaintiffs filed this diversity lawsuit[4] in 2005 and added the City as a defendant in 2006.[5] Plaintiffs alleged that the City and other defendants negligently left uncovered the manhole into which plaintiff Darlene Benson fell.[6] In 2007 the parties reached a settlement, which was reduced to a money judgment on May 15, 2007.[7] Eight years later, plaintiffs have yet to collect

---

[1] R. Doc. No. 73.
[2] R. Doc. No. 70.
[3] R. Doc. No. 79.
[4] R. Doc. No. 1, ¶ 2.
[5] R. Doc. No. 19.
[6] R. Doc. No. 1, ¶¶ 7–8.
[7] R. Doc. No. 70.

the settlement. While the City acknowledges the debt it owes plaintiffs and indicates its intention to pay, the City claims that pursuant to state and federal law it cannot do so until funds are appropriated for that purpose.[8] The City has yet to appropriate the funds.

## LAW AND ANALYSIS

### I. LAW

Rule 69(a) of the Federal Rules of Civil Procedure governs the process for enforcing a money judgment obtained in a diversity action. The rule provides in pertinent part:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. *The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located*, but a federal statute governs to the extent it applies.

*Id.* (emphasis added). As this Court has previously explained, "Rule 69(a) permits a judgment creditor to use any method of execution consistent with the practice and procedure of the state in which the district court sits. However, a judgment creditor generally may not avail itself of methods of enforcement that are not available pursuant to state law." *City of New Orleans v. Mun. Admin. Servs., Inc.*, No. 02-0130, 2004 WL 2496202, at *2–3 (E.D. La. Nov. 5, 2004).

While Article 12, section 10(A), of the Louisiana Constitution permits a personal injury lawsuit against the City, section 10(C) contains an "anti-seizure" provision whereby "no public property or public funds shall be subject to seizure . . . . No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." Almost identically, Louisiana Revised Statute, section 13:5109(B)(2), mandates that "[a]ny judgment rendered in any suit filed against . . . a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible,

---

[8] R. Doc. No. 79, at 1.

payable, and paid only . . . out of funds appropriated for that purpose by the named political subdivision." Louisiana courts have consistently held that a judgment creditor of a political subdivision of the State has no way to collect a money judgment absent appropriation of funds by the political subdivision for the purpose of paying judgments. *E.g., Vogt v. Bd. of Comm'rs of the Orleans Levee Dist.*, 814 So. 2d 648, 654 (La. App. 4 Cir. 2002); *Landry v. City of Erath*, 628 So. 2d 1178 (La. App. 3 Cir. 1993); *State, Dep't of Trans. & Dev. v. Sugarland Ventures, Inc.*, 476 So. 2d 970 (La. App. 1 Cir. 1985); *see also Newman Marchive P'ship, Inc. v. City of Shreveport*, 979 So. 2d 1262, 1267 (La. 2008) ("*Newman*") (acknowledging these holdings).

Absent the appropriation of funds, the U.S. Court of Appeals for the Fifth Circuit has held that "when there is a federal interest in the remedy, [the federal courts] may trump a state's anti-seizure provision and enforce a money judgment against a public entity." *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 F. App'x 921, 923 (5th Cir. 2009) (not designated for publication) ("*Freeman*") (citing *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 653 (5th Cir. 2000)). Accordingly, even when no federal statute explicitly authorizes enforcement procedures different from the procedures used by a state, a federal court may nonetheless be permitted to use such procedures if the case invokes a federal interest.

A federal interest is sometimes obvious, such as in civil rights actions. *E.g., Bowman v. City of New Orleans*, 914 F.2d 711 (5th Cir. 1990) (permitting the enforcement of a money judgment against the City under 42 U.S.C. § 1988); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980) (same). The Fifth Circuit has also recognized, however, that a federal interest can exist even in a diversity lawsuit under certain circumstances. In *Freeman*, for example, the Fifth Circuit recognized a sufficient federal interest "when a state makes abundantly clear that it will

never satisfy the judgment." 352 F. App'x at 923 (citing *Gates*, 616 F.2d at 1271). Furthermore, the Fifth Circuit has indicated in dicta that the failure of a governmental entity to satisfy a judgment could, in some circumstances, amount to a violation of the Takings Clause of the U.S. Constitution, which would give rise to a sufficient federal interest to overcome a state anti-seizure provision. *Vogt v. Bd. of Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 697 (5th Cir. 2002). When no federal interest in the remedy exists, however, the Fifth Circuit has refused to order the seizure of public property. *Freeman*, 352 F. App'x at 923.

Pursuant to the authorities discussed above, in order to prevail on their motion, plaintiffs must demonstrate either that the City has appropriated funds for the purpose of paying plaintiffs' settlement, or that a federal interest is implicated in this case.

## II.   ANALYSIS

Plaintiffs have not shown that the City has appropriated funds for the payment of their settlement, nor have they proven a federal interest that would permit this Court to trump the anti-seizure provision. Instead, plaintiffs argue that three cases "have revealed cracks in the armor of the political subdivisions"[9] such that plaintiffs' judgment is enforceable out of the City's BP Settlement funds despite the lack of appropriation or a federal interest. But as explained below, plaintiffs' reliance on these cases is misplaced.

The first case plaintiffs cite is *Vogt v. Board of Commissioners of the Orleans Levee District*. 294 F.3d 684. In *Vogt*, the Fifth Circuit indicated in dicta that the failure of a governmental entity to satisfy a judgment could, in some circumstances, amount to a violation of the Takings Clause. *Id.* at 697. The implication was that such a violation would amount to a

---

[9] R. Doc. No. 73-1, at 4.

4

federal interest sufficient to trump a state anti-seizure provision.  *Id.*  Importantly, however, the *Vogt* decision explicitly cautioned:

> We do not hold or imply . . . that every tort or breach of contract claim against a government entity necessarily becomes a takings claim.  Our holding extends only to cases where . . . the government has forcibly appropriated private property without a claim of right or of public or regulatory purpose.

*Id.*  This limitation forecloses the argument that any unpaid claim against a government entity amounts to a takings claim.  Because the plaintiffs in this case have not had their private property forcibly appropriated by the City, *Vogt* does not apply.

The second case plaintiffs cite is *Stanford v. Town of Ball*, 999 So. 2d 304 (La. App. 3d Cir. 2008).  In *Stanford*, the town received a settlement from its liability insurer for the specific purpose of paying the plaintiff's money judgment.  *Id.* at 308–09.  The town refused to pay plaintiff out of the funds received from the liability insurer.  *Id.* at 305.  The Louisiana Third Circuit Court of Appeal affirmed the issuance of a writ of mandamus to enforce the judgment, holding that by signing a release and accepting the funds from the insurer, the town had effectively "dedicated" or appropriated those funds for the purpose of paying the plaintiff's claim.  *Id.* at 309.  A political subdivision may be deemed to have "appropriated" money for the purpose of paying a judgment by its actions as well as by its enactments.  *Stanford* is, therefore, of no consequence to plaintiffs, as the City did not receive the BP Settlement for the purpose of paying plaintiffs' money judgment.  By accepting BP money, the City did not implicitly agree to use the money for plaintiffs' benefit.

The third case plaintiffs cite is *City of Alexandria v. Cleco Corp.*, No. 08-800, 2014 WL 4072073, (W.D. La. Aug. 15, 2014).  In *City of Alexandria*, the U.S. District Court pierced the state anti-seizure provision for two reasons.  *Id.* at *8–9.  In addition to holding that the city had effectively waived the protection of the anti-seizure law by behaving inconsistently with the

intent to invoke the provision, the court also concluded that the city "clearly intends to never satisfy the Final Judgment." *Id*. This conclusion was significant under the Fifth Circuit's *Freeman* decision, in which the Fifth Circuit confirmed a federal interest in enforcing a federal diversity judgment where "a state makes abundantly clear that it will never satisfy the judgment." 352 F. App'x at 923. The court in *City of Alexandria* was satisfied that the city had demonstrated the "requisite level of recalcitrance" after, among other things, the city attorney sent a letter to plaintiff stating that the "[t]his case is *closed* as far as the City is concerned." *Id.* at *7 (emphasis added).

In reaching its decision, the district court in *City of Alexandria* distinguished the facts in its case from the facts in *Freeman*, where the Fifth Circuit found that the defendant-municipality's assertion that it would satisfy the judgment following an appropriation of funds did not evidence the city's intention *never* to pay the judgment. *Id*; *see also Freeman*, 352 F. App'x at 925. Considering that, as in *Freeman*, the City in this case has done no more than indicate "that [it] does not believe it must immediately satisfy the judgment," *see Freeman*, 352 F. App'x at 925, its actions do not rise to the level of recalcitrance required to pierce the anti-seizure provision.

Plaintiffs argue that these three cases collectively stand for a different proposition. They assert that *Vogt*, *Stanford*, and *City of Alexandria* each "involve situations in which the political subdivisions were ordered to pay judgments out of funds that the political subdivisions had received from an outside party. The political subdivisions did not have to pay out of their operating budgets."[10] But this observation is without significance. As the Louisiana Supreme Court has explained, the anti-seizure law

---

[10] R. Doc. No. 73-1, at 5–6.

requires a specific appropriation of funds to pay a particular judgment before disbursement of those funds may be compelled by writ of mandamus. Prior to such an appropriation, the funds remain "public funds," and any effort by the judiciary to direct their disbursement would constitute an unlawful seizure of public funds under La. Const. art. XII, § 10(C).

*Newman*, 979 So. 2d at 1271.

In other words, plaintiffs have not convincingly demonstrated that the source of these particular funds is relevant. Under *Newman*, all unappropriated City funds are "public funds" for the purpose of the anti-seizure law. Without a "specific appropriation of funds to pay a specific judgment," any funds possessed by the City are public funds not subject to writs of execution or mandamus to pay plaintiffs. *Id.* at 1268. Because there has been no appropriation, either explicit or—following the Louisiana Third Circuit's decision in *Stanford*—implicit, the source of the City's money does not matter. Plaintiffs cannot touch it.

## CONCLUSION

Because the City has not appropriated funds to pay plaintiffs' money judgment, and because no federal interest is implicated in this case, the anti-seizure provision applies. As this Court observed approximately ten years ago, "[t]his court recognizes and sympathizes with plaintiff[s'] plight in getting judgment against the State or political subdivision satisfied. Nonetheless, this court is without constitutional or statutory authority to compel [a political subdivision] to pay the judgment rendered against it." *City of New Orleans*, No. 02-0130, 2004 WL 2496202, at *4–5 (quoting *Vogt*, 814 So. 2d at 656). Accordingly,

**IT IS ORDERED** that plaintiffs' motion is **DENIED**.

New Orleans, Louisiana, September 10, 2015.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE